]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD VELASQUEZ,<br><br>    Defendant. | Case No. 22-20019-HLT |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Assistant United States Attorney, Kim I. Flannigan, herby submits the following sentencing memorandum in support of the parties proposed sentence.

## FACTS

On January 12, 2022, the Shawnee, Kansas Police Department dispatched officers to a Walmart store located at 16100 W. 65th Avenue in that city. Officers were advised that a woman had called to report her car stolen. The woman stated her husband and father had started three cars outside their home to allow them to warm up. After a few minutes she noticed that all three had been stolen. The victim stated she remembered leaving her Apple Airpods in one of the stolen cars, a Dodge Durango, and was able to track them through Apple to the Walmart in Shawnee.

When officers arrived at the Walmart, they located the Dodge Durango backed into a parking stall. They noticed the Durango was occupied by a driver, who was later

identified as the defendant, Richard Velasquez.  The defendant was asked to get out of the car and was taken into custody.  On the floorboard where the defendant's feet had been, officers located a loaded Taurus 9mm pistol.  A check of the defendant's criminal history revealed he had previously been convicted of felony offenses in Wyandotte County, Kansas, and was therefore prohibited from possessing a firearm.

Subsequent investigation determined that the defendant's DNA matched DNA found on the slide of the pistol.  Furthermore, the firearm was manufactured in Brazil, and therefore traveled in interstate commerce.  The defendant was indicted on May 4, 2022 and charged with being a felon in possession of a firearm.  He subsequently plead guilty to that offense on October 25, 2022, pursuant to a Fed. R. Crim Pro.  11 (c)(1)(C).  The parties engaged in plea negotiations and determined that a sentence of 60 months was an appropriate sentence given the facts and circumstance of the case, as well as the history and characteristics of the defendant.

## ARGUMENTS AND AUTHORITIES

I. **Reasonableness Standard**

A sentence is reviewed for reasonableness with deference to the district court under "the familiar abuse of discretion standard." *Gall v. United States*, 552, U.S. 38 (2007); *see also, United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008). Reasonableness "has both procedural and substantive components." *United States v. Atencio*, 476 F.3d 1099,1102 (10th Cir. 2007), *overruled in part on other grounds by*

*Irizarry v. United States*, 553 U.S. 708, 128 S. Ct. 2198, 2201 n.1, 2203-04 (2008). The starting point for any sentence is a properly calculated Guidelines range. A district court's decision to grant or deny a variance [is reviewed] under a deferential abuse of discretion standard." *United States v. Beltran*, 571 F.3d 1013, 1018 (10th Cir. 2009). A sentence within a properly calculated guidelines range enjoys a rebuttable presumption of reasonableness. *Id*. Substantive reasonableness addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008). When reviewing for substantive reasonableness, this Court must defer to the district court's factual findings and determinations of weight under § 3553(a). *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) ("We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed <u>de novo</u>. . . It is not for the Court of Appeals to decide <u>de novo</u> whether the justification for a variance is sufficient or the sentence reasonable, and we must therefore defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings.") (Internal punctuation, quotation, and citation omitted).

## II.   § 3553(a) Factors

A consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests the agreed upon sentence of 60 months, is appropriate. The 60-month sentence proposed

3

by the parties, represents a sentence of just 9 months above the advisory guideline range.

This Court must consider the sentencing factors set forth in § 3553(a). These include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. While the court must address each of these provisions, the government will focus on the first three, as they were the motivation of the plea negotiations in this case.

1. *Offense Conduct.*

The defendant brazenly stole a car from the front of a residence while the homeowners were present. This is risky and dangerous behavior and put the life of the defendant and homeowners in jeopardy. Had he been caught in the act; it is entirely possible a confrontation would have occurred. Such confrontations have the propensity to turn violent. He received a 4-level enhancement for having the firearm in connection

with another felony offense and does not object to the appropriateness of that enhancement. Thus, the defendant acknowledges possession of the firearm while stealing the car, making the event that much more dangerous to the community. Additionally, the defendant's history of using firearms to commit violent crimes is well documented. Thus, it is not far-fetched to assume the defendant would have used the firearm to threaten or intimidate the car owners if confronted.

2. *History and Characteristics of the defendant.*

The defendant's criminal history is long, and mostly violent. His introduction to the criminal justice system occurred when he was just thirteen years old. At that time, the defendant along with others, attacked an individual causing great bodily harm and causing damage to the victim's vehicle. The defendant was allowed to plead guilty to disorderly conduct and criminal damage to property and was given probation. He failed to appear, and several warrants were issued due to the defendant's failure to comply. Ultimately, he was sentence to 5 months custody (PSR ¶ 26).

The following year the defendant was convicted of disorderly conduct and sentenced to probation to run concurrently with his previous case. The defendant failed to appear in this case as well, and several warrants were issued. This term of probation was also revoked, and he was sentenced to 5 months custody (*Id*. at ¶ 27). At the age of seventeen, the defendant was convicted of attempted theft, and sentenced to 9 months' probation. The defendant failed to appear, and warrants were once again issued (*Id*. at ¶

5

29). In 2012 and 2013, the defendant was convicted of possessing liquor by a minor (*Id*.at ¶¶ 29, 30). Charges of possession of marijuana were dismissed in the 2013 case. While these convictions are for relatively minor conduct, they are worth noting because court records in the 2013 case reflect the defendant said "fuck this court" in open court and made threats to "rush someone" as he left the courtroom. Several warrants were issued due to his non-compliance with probation conditions. The defendant continued his criminal behavior in 2013, amassing convictions for resisting arrest, failure to appear, and criminal damage to property (*Id*. at 21, 32, 33). Up to this point, none of the defendant's prior criminal behavior resulted in any criminal history points being assessed. However, the defendant's 2013 conviction for criminal damage to property was assessed 2 criminal history points. This conviction was the result of the defendant damaging a cell window at the Johnson County jail.

In 2014, the defendant was convicted of aggravated robbery and aggravated battery. The court records describe the defendant and others taking a cellular phone, headphones, cash, car keys, and other items from an individual while threatening him with great bodily harm. The defendant provided his version of events and stated "We set someone up to rob them. They wanted to buy weed. We told them we had weed so they came to the house, we put a gun on them, and they got pistol whipped." The defendant claimed to have no regrets about the incident. While in custody the defendant incurred 75 disciplinary reports. His violations included battery, dangerous contraband,

threatening and intimidating, theft, incitement to riot, disobeying orders, lying, work performance, undue familiarity, and fighting. It appears the defendant absconded, and a warrant was issued, which resulted in his parole being revoked. (*Id*. at ¶36).

In 2015, at the age of 20 years old, the defendant was convicted of aggravated assault. Because of this offense he is now required to register in the State of Kansas as a violent offender. The defendant was charged in two counts with using a deadly weapon (a firearm) and placing two different individuals in fear of immediate bodily harm during a drive by shooting. Once again, the defendant absconded, and his parole was revoked. (*Id*. at ¶ 36) That same year the defendant was convicted of battery (*Id*.¶ 37), despite having a no contact order with the victim.

In 2020, the defendant was convicted of fleeing and eluding which ended in a car accident, (*Id.* at ¶ 38), and Felony theft (*Id*. at ¶ 39). The felony theft case was the result of the defendant stealing a car. It appears the defendant was granted probation on both cases, and again failed to comply with his probation conditions in either case. When the defendant committed the instant offense, he was under criminal justice sentences for fleeing and eluding, felony theft, aggravated robbery, aggravated battery, and aggravated assault. (*Id*. at ¶ 41). The defendant has a case pending in Kansas City, Missouri, for stealing and he has twice failed to appear. (*Id*. at ¶ 45). Additionally, the defendant has a pending case for narcotics possession in which he has an active warrant. He failed to appear on that case on June 18, 2020. The police reports of that case indicate that

officers received a report of a stolen vehicle. When they spotted the vehicle there was a female inside. They set up surveillance and later observed the defendant and this female walking in the area. Officers witnessed the defendant grab the female by the hair and start dragging her down the sidewalk. When officers attempted to intervene both people fled on foot. The officers were able to apprehend the defendant after a struggle. After getting the defendant on this stomach and handcuffed, officers turned him over and observed a baggie containing 7.7 grams of methamphetamine as well as a bag containing marijuana directly under the defendant.

In addition to the convictions noted here, the defendant has several arrests, as well as other criminal conduct. Those items are reflected in the PSR, paragraphs 43,44,47-57. Furthermore, the defendant has ties to the Southdale Bloods, which is a Kansas City street gang. According to the PSR, the defendant's father created the gang when the defendant was a teenager, and the defendant grew up watching his father's gang activities. The defendant joined the gang at a young age and continues to maintain gang associates. The defendant has shown a very high level of contempt for the criminal laws of this community and this country, as well as the criminal justice system generally. The history and characteristics of the defendant, justify the sentence proposed by the parties.

3. *Seriousness of the offense/adequate deterrence/ protection of the public.*

There is no doubt the offense of conviction is serious. Possessing a firearm that emboldens the commission of another felony offense is a recipe for gun violence.

Additionally, knowing you are prohibited from possessing that firearm, and making the decision to use it anyway, demonstrates a tremendous disregard for the law.  The defendant has a history of gun possession in connection with other felony offenses.  In one of the convictions set out above, the defendant was convicted after a victim was pistol whipped in connection with an attempted robbery.  The seriousness of the offense warrants the sentence recommended by the parties.

    A sentence of 60 months will provide adequate deterrence and protect the public from further crimes by the defendant. This sentence represents a punishment that is sufficient, but not greater than necessary to address the congressionally mandated sentencing objectives.   As noted in *United States v. McComb*, 519 F.3d 1049,1053-54, (10th Cir. 2007) (citing, *United States v. Ruiz*, 477 F.3d 1196, 1201 (10th Cir. 2007), sentencing is "a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders."   This proposed sentence is needed given the facts set forth above.  It will provide deterrence not just to the defendant but to future offenders as well.  Additionally, a sentence of 60 months will protect the public from further crimes of the defendant. The defendant's criminal history reflects criminal behavior for nearly every hear beginning in 2008.  The only time the defendant was not engaged in criminal behavior, was during periods of his incarceration.  Thus, a

sentence of 60 months will provide the public with protection from this defendant for at least that period of time.

## CONCLUSION

The parties have entered into a plea agreement where both sides believe that a sentence of 60 months incarceration meets all of the sentencing objectives set forth in Title 18 U.S.C. §3553(a).  The proposed sentence represents just punishment and is sufficient but not greater than necessary to meet those sentencing objectives.  The parties respectfully request the court accept the plea agreement and sentence the defendant to the proposed 60 months in custody.

Respectfully Submitted,

Duston J. Slinkard
United States Attorney
District of Kansas


 s/ Kim I. Flannigan
KIM I. FLANNIGAN, #13407
Assistant United States Attorney
500 State Ave., Suite 360
Kansas City, KS  66101
Tele:  913-551-6730
Fax:   913-551-6541
Kim.Flannigan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                          */s/ Kim I. Flannigan*
                                          KIM I. FLANNIGAN
                                          Assistant United States Attorney